UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTIAN PRESSLEY,

                    Plaintiff,

                                              Case No. 20-cv-1404-pp

        v.

OZAUKEE COUNTY,[1]

                    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT (DKT. NO. 50), GRANTING DEFENDANTS' MOTION
TO STRIKE (DKT. NO. 67), DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 60), GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 53) AND DISMISSING CASE**

        There are four motions pending: the plaintiff's motion for leave to file a

second amended complaint, dkt. no. 50, the defendants' motion for summary

judgment, dkt. no. 53, the plaintiff's motion for summary judgment, dkt. no.

60, and the defendants' motion to strike the plaintiff's sur-reply brief, dkt. no.

67. This order resolves the pending motions and dismisses the case.

**I.      Background**

        A.      Factual Background[2]

        The plaintiff's claims arise from his attempts to post on the Ozaukee

County Sheriff's Office Facebook page.

---

[1] There are two individual defendants—Sheriff James Johnson and Timothy
Nelson—whom the plaintiff added in his April 21, 2022 amended complaint.
Dkt. No. 38. The clerk's office never has added the individual defendants to the
case caption, likely because the plaintiff did not list them in the caption of the
amended complaint.

[2] The court took the following facts from the defendants' proposed findings of
fact (Dkt. No. 55); these facts are undisputed for the purposes of summary
judgment. See *infra* Section V.

1

On February 15, 2018, the plaintiff posted several comments on the Facebook page. Dkt. No. 55 at ¶4. The comments accused "Sheriffs"[3] of obstructing justice, discussed the plaintiff's former girlfriend's alleged drug and alcohol use and her alleged criminal charges. Id. Between January 26, 2018, and February 16, 2018, the plaintiff also sent a string of private messages, "challenging Sheriffs to a physical fight, accusing a Sheriff by name of falsifying a police report, and sending a link to a website that defined a vulgar slang term." Id. at ¶5.

On February 16, 2018, the plaintiff's post on the public section of the Facebook page was deleted and his access to the page was restricted (the defendant does not say by whom). Id. at ¶6. The defendant emphasizes that this didn't prevent the plaintiff from using Facebook, from viewing or commenting on other pages or from accessing or using other social media platforms. Id. at ¶¶7-10. Neither Sheriff James Johnson nor Timothy Nelson personally were involved in reviewing the Facebook posts or messages, deciding to remove them or blocking the plaintiff's access to the page. Id. at ¶17.

Both Ozaukee County and the Sheriff's Office have policies and procedures regarding their social media accounts. Id. at ¶11. "These policies and procedures allow the County and Sheriff's Office to prohibit certain content posted on its public social media accounts." Id. "Other Facebook users have made public comments and posts disparaging the Sheriff's Office and its Sheriffs and containing profane and racist language. These posts have not been removed." Id. at ¶12.

Between January 2020 (about two years after the plaintiff's 2018 comments) and September 2020, the plaintiff tried to make additional posts

---

[3] The defendant presumably means deputy sheriffs.

and comments on the Facebook page, but he did not have access. Id. at ¶1. On July 26, 2020, the plaintiff filed an open records request for documents relating to the Sheriff's Office action in blocking or restricting his access to the Facebook page. Id. at ¶2. On August 17, 2020, the Sheriff's Office gave the plaintiff documents responsive to his request. Id. at ¶3.

On August 24, 2020, the county received from the plaintiff a Notice of Claim related to his restriction from posting on the Facebook page. Id. at ¶13. In the Notice of Claim, the plaintiff threatened to file suit if he wasn't contacted by September 1, 2020. Id. at ¶14. On September 9, 2020, the plaintiff filed the complaint in this federal case, claiming violations of his constitutional rights and his rights under state law. Id. at ¶15.

B.    Procedural Background

The plaintiff's original, September 2020 complaint named only Ozaukee County in the caption. Dkt. No. 1 at 1. In the "parties" section of the complaint, he also alleged that there was a "John Doe" employee of the county whom he intended to sue. Id. at ¶5. The complaint alleged that Ozaukee County and the Doe defendant had violated the plaintiff's rights under the Wisconsin Constitution, Ozaukee County Policy 337.2, the First and Fourteenth Amendments to the United States Constitution and Wis. Stat. §946.12(2). Dkt. No. 1 at ¶¶19–28.

In March 2022, the court gave the plaintiff permission to amend the complaint to add three Ozaukee County employees as individual defendants—Chantel Engel, Timothy Nelson and Sheriff James Johnson. Dkt. No. 37. The court allowed the plaintiff to amend his complaint to sue the individual defendants in their *individual* capacities, not their official capacities. Id. at 7. The court found that the plaintiff's proposed claims against these individuals in

3

their *official* capacities would have been redundant because he already had named Ozaukee County as a defendant. Id.

On April 21, 2022, the plaintiff filed the amended complaint. Dkt. No. 38. The amended complaint, like the original, named only Ozaukee County in the caption. Id. at 1. But in the "parties" section, the amended complaint stated that "Defendant Jim Johnson was during the injury and is currently the Sherriff [sic] of Ozaukee County," and that "Defendant Timothy Nelson was during the injury and is currently the Business Manager of the Ozaukee County Sherriff [sic] Department[.]" Id. at ¶¶4-5. The amended complaint made specific allegations against Johnson and Nelson, as well as against Ozaukee County.

After the individual defendants had answered the amended complaint, dkt. no. 41, the court calendared a status conference, dkt. no. 46. At that May 10, 2023 status conference, the court observed that the amended complaint made allegations against the new defendants "in their official capacities" even though the court had ruled that the plaintiff could sue the individual defendants only in their individual capacities. Dkt. No. 49 at 1. The plaintiff explained that he had intended to sue the individual defendants only in their individual capacities, and said that he had made an error in the amended complaint. Id. at 2. He orally asked permission to file a second amended complaint. Id. The court ordered that by May 26, 2023, the plaintiff must file a written motion asking leave to file a second amended complaint. Id. The court also set a deadline of October 16, 2023 for parties to file dispositive motions. Id. On May 24, 2023, the court received from the plaintiff a motion for leave to file a second amended complaint, dkt. no. 50, which the defendants opposed, dkt. no. 52. The court has not yet ruled on that motion; it does so in this order.

4

On October 16, 2023, the defendants filed a motion for summary judgment. Dkt. No. 53. On October 27, 2023—eleven days after the dispositive motion deadline—the court received from the plaintiff a combined motion for summary judgment and response to the defendants' motion. Dkt. No. 60. The defendants filed a reply in support of their motion for summary judgment. Dkt. No. 61.[4] They asked the court to strike the plaintiff's motion for summary judgment as untimely and to grant their summary judgment motion.[5] Id. at 5.

On December 11, 2023, the court received from the plaintiff a document titled "Plaintiffs Reply to Defendants ECF 62-65."[6] Dkt. No. 66. The defendants then moved to strike the plaintiff's December 11, 2023 filing. Dkt. No. 67.

## II. Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. No. 50)

### A. The Parties' Arguments

The plaintiff asked leave to file a second amended complaint because "there is a misunderstanding of the plain intended meaning" of his operative amended complaint. Dkt. No. 50 at 1. The plaintiff said that during discovery he had identified Jim Johnson and Timothy Nelson as proper defendants and

---

[4] This filing is docketed as a "BRIEF in Support," but it is titled "Ozaukee County's Reply Brief in Support of its Motion for Summary Judgment." Dkt. No. 61.

[5] The court has not ruled on this request. The defendants should have made it in a separate motion. Even if they had filed a separate motion to strike, that motion would be moot because this order denies the plaintiff's motion for summary judgment on procedural grounds.

[6] The documents at Dkt. Nos. 62-65 are the defendants' brief in support of their motion for summary judgment, proposed findings of fact and affidavits. The defendants originally filed these documents on October 16, 2023, along with their motion for summary judgment. Dkt. Nos. 54-57. It appears that they accidentally re-filed the same documents on November 22, 2023 at Dkt. Nos. 62-65. The duplicates now have been stricken at the defendants' request.

5

that in his amended complaint, he'd asked to add them in place of the "John Doe" defendant he'd mentioned in the original complaint. Id. at 1–2. The plaintiff argued that he had amended the complaint to sue Johnson and Nelson in their individual capacities only and that his description of them as employees of Ozaukee County was intended to identify them, not to assert a claim against them in their official capacities. Id. at 2.

The plaintiff maintained that a complaint that is unclear "needs to be clarified so that there is no confusion." Id. The plaintiff argued that another amendment would cause no prejudice or surprise to the defendants because the defendants already were aware that Johnson and Nelson were defendants. Id. at 2–3. The plaintiff apologized for the "confusion" and asked permission to amend the complaint a second time to add the words "in his personal capacity" as to defendants Johnson and Nelson. Id. at 3.

The defendants responded that the court should not permit the plaintiff to amend to correct deficiencies to which the court had alerted him before he filed the first amended complaint. Dkt. No. 52 at 2–3. They asserted that the plaintiff simply failed to follow the court's order and now was trying to belatedly remedy his errors. Id. at 3. They argued that amending the complaint a second time would cause "unnecessary and continued delay" due to the plaintiff's "failure to repeatedly cure deficiencies that were directed by the Court" and that it would prejudice the defendants. Id.

The defendants contended that the plaintiff had not shown good cause to amend late in the litigation. Id. at 4. They argued that there was "no diligence" on the plaintiff's part because he had had the information necessary to amend his complaint for two years but had failed to do so. Id. The defendants pointed out that it took the plaintiff a year to determine that he'd made an error in his

6

amended complaint and seek leave to file a second amended complaint. Id. at 5.

The defendants contended that the plaintiff had not complied with the court's order in drafting the proposed second amended complaint. Id. at 1. They asserted that the proposed second amended complaint named "Ozaukee County, et al." in the caption, but named the county, Johnson and Nelson in the body. Id. at 2. They observed that the body of the proposed second amended complaint mentioned—and perhaps intended to name as a new defendant, though it was not clear—Chantel Engel. Id. They also pointed out that James Johnson no longer was the sheriff of Ozaukee County. Id. The defendants argue that they would be prejudiced by the amendment because it would cause additional delay and expense in litigating the case. Id. at 6–7.

The plaintiff did not file a reply brief in support of his motion.

B.     Analysis

Generally, the court evaluates a motion for leave to amend a complaint under Federal Rule of Civil Procedure 15(a)(2). See Alioto v. Town of Lisbon, 651 F.3d 715, 719 (7th Cir. 2011). Under that rule, courts should freely grant a moving party leave to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). But Rule 16(b)(2) requires the court to issue a scheduling order as soon as practicable and Rule 16(b)(3)(A) requires that scheduling order to limit the time for amending the pleadings without leave of court. When the deadline for amending pleadings without leave of court has expired, a party may file an amended pleading only by demonstrating good cause to modify the scheduling order and only with the court's consent. Fed. R. Civ. P. 16(b)(4). The "good cause" standard primarily considers the diligence of the moving party. MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., 994 F.3d 869, 878

7

(7th Cir. 2021) (citations omitted) (applying "good cause" in the motion to amend pleadings context). Delay alone is not a sufficient reason to deny a proposed amendment; the non-moving party must show a lack of diligence coupled with another reason for denial, such as prejudice to the non-moving party. See George v. Kraft Foods Global, Inc., 641 F.3d 786, 789–91 (7th Cir. 2011).

The plaintiff has not demonstrated good cause for amending his complaint a second time. In response to the plaintiff's request to file a first amended complaint, dkt. no. 14, the court issued an eleven-page written order, dkt. no. 37. That order stated, "The court will allow the plaintiff to amend the complaint for the sole purpose of naming the three defendants in their *individual* capacities." Dkt. No. 37 at 7 (emphasis in the original). Despite that instruction, the plaintiff filed a first amended complaint that (a) added only two defendants (Johnson and Nelson) without naming the third (Engel) and (b) did *not* specify that he was suing the individuals in their individual capacities. Dkt. No. 38. The plaintiff argues that he thought that the amended complaint reflected that he was suing Johnson and Nelson in their individual capacities, but in "hindsight," he realized that not specifically stating that fact "caused confusion." Dkt. No. 50 at 2. He says that it was his "plain intent" to sue the two individuals in their individual capacities. Id. But the amended complaint specifically states in two paragraphs that "[t]he actions of Defendant, *acting in their official* capacity," violated the plaintiff's rights. Dkt. No. 38 at ¶¶24-25 (emphasis added). The plaintiff did not list the individual defendants in the caption of the first amended complaint. He did not include Engel at all, even though the court gave him permission to do so. He did not use the words "individual capacity" when referring to Johnson and Nelson. And he knew how

8

to do so, because in his original complaint, he stated that "John Doe" was "being sued in his personal and official capacity." Dkt. No. 1 at ¶5. The plaintiff has not shown good cause why he did not make clear in the first amended complaint that he was suing Johnson and Nelson in their individual capacities, despite being given the opportunity to do so.

The plaintiff maintains that the defendants will not be prejudiced if he amends his complaint a second time, because at the May 10, 2023 hearing he told the court and the defendants that he had intended to sue the individual defendants only in their "personal capacity." It is true that the plaintiff told the court at that hearing that he had intended to sue Johnson and Nelson only in their individual capacities. Dkt. No. 49 at 1. So perhaps a second amended complaint making clear that the plaintiff was suing Johnson and Nelson only in their individual capacities would not come as a surprise to the defendants. But neither the original complaint nor the first amended complaint named *Engel* as a defendant in *any* capacity—even though the court gave the plaintiff permission to add her when it gave him permission to file his first amended complaint.

Discovery has been closed since August 2023. If the court were to allow the plaintiff to file a second amended complaint adding a new defendant at this late stage, it *would* prejudice the defendants; it likely would require additional discovery and a new round of summary judgment briefing. See Liebhart v. SPX Corp., 917 F.3d 952, 965 (7th Cir. 2019) (citation omitted) (affirming denial of leave to amend when plaintiffs sought leave more than four months after they learned of additional facts to support their claims, the parties had briefed summary judgment motions, and trial was approaching within three months). Perhaps the plaintiff *didn't* intend to add Engel as a defendant—the proposed

9

second amended complaint does not name her in the caption. But it is not the court's obligation, or the defendants', to try to figure out what a plaintiff "intended" to allege in a pleading; it is the *plaintiff's* responsibility to provide the "short and plain statement of the claim" required by Fed. R. Civ. P. 8.

The court will deny the plaintiff's motion for leave to file a second amended complaint. Dkt. No. 50.

### III.    Plaintiff's Motion for Summary Judgment (Dkt. No. 60)

On October 27, 2023, the court received from the plaintiff a motion for summary judgment. Dkt. No. 60. Although the motion is entitled "Motion for Summary Judgment," the plaintiff asserts that this document "also serves as reply" to the defendants' motion for summary judgment because the plaintiff is "too busy to file multiple filings." Id. at 1.[7] The plaintiff's filing is deficient.

First, the court received the filing eleven days after the deadline the court had set for filing summary judgment motions. Dkt. No. 49 at 2 (setting the dispositive motion deadline for October 16, 2023).[8]

Second, the plaintiff's filing does not comply with the court's local rules. Civil Local Rule 56(b)(1) (E.D. Wis.) states that a party moving for summary judgment must file a memorandum of law, a "statement setting forth any material facts to which all parties have stipulated," "a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law" and "any

---

[7] The defendants did not file a substantive opposition brief to the plaintiff's summary judgment motion. Instead, they asked in their reply brief in support of their own summary judgment motion that the court strike the plaintiff's summary judgment motion as untimely. Dkt. No. 61 at 5.

[8] The defendants timely filed their summary judgment motion on October 16, 2023. Dkt. No. 53.

affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c)."
The plaintiff only filed a motion, and that motion does not constitute a
"memorandum of law" because it cites no law. (The plaintiff stated in the
motion that "[t]here is no need to cite case law." Dkt. No. 60 at 3.) The plaintiff
did not request an extension of time to file a summary judgment motion, nor
did he ask for additional time to file the required supporting memorandum of
law, findings of fact and evidence. The local rules warn litigants that "[f]ailure
to comply with the requirements in [Civil L.R. 56] may result in sanctions up to
and including the Court denying or granting the motion." Civil L.R. 56(b)(9).

The plaintiff cannot claim ignorance of this rule. Rule 56(a) of the court's
local rules require that if a case involves a self-represented party and the
opposing party (the party represented by counsel) files a motion for summary
judgment, counsel for the opposing party must include in his or her summary
judgment filings "the text to Fed. R. Civ. P. 56(c), (d), and (e), Civil L.R. 56(a),
Civil L.R. 56(b), and Civil L.R. 7 . . . ." Civil L.R. 56(a) (E.D. Wis.). The
defendants complied with that rule—their October 16, 2023 summary
judgment motion includes the text of rules it lists. Dkt. No. 53 at 2-7. The
plaintiff received the defendants' motion, as evidenced by his statement in his
own motion that his motion "also serves as a reply to Defendants Motion for
Summary Judgment, ECF 53 and supporting ECF 54." Dkt. No. 60 at 1.
Despite the defendants providing him with a copy of the requirements for filing
a summary judgment motion, the plaintiff did not follow those requirements.

Nor is the fact that the plaintiff is representing himself an excuse for his
failure to follow the rules. "[A] court has discretion to enforce its local rules,
even against a pro se litigant." Turner v. Cox, 569 F. App'x. 463, 467 (7th Cir.
2014) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). See also,

Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008) ("[I]t is . . . well established that pro se litigants are not excused from compliance with procedural rules.") That includes denying a self-represented plaintiff's motion for summary judgment for noncompliance with the Local Rules. Blizzard v. Marik, Case No. 18-cv-1633, 2019 WL 6465400, at *1 (E.D. Wis. Nov. 29, 2019) (citing Wilson v. Kautex, Inc., 371 F. App'x 663, 664 (7th Cir. 2010)). The court has the authority to deny the plaintiff's motion solely because he did not comply with the requirements of Civil L.R. Rule 56 and because his motion was untimely.

Third, there is reason for the rules. A motion for summary judgment is different from a motion to dismiss for failure to state a claim. When, early in the case, a defendant asks the court to dismiss a case because the complaint does not state a claim, the court looks only at the allegations in the complaint to determine whether they state a claim. Parties are not required to present evidence—in fact, the court usually cannot consider evidence outside the four corners of the complaint in deciding whether to dismiss a complaint for failure to state a valid claim. In contrast, parties file summary judgment motions after they have conducted discovery, when they have evidence. A party moving for summary judgment essentially is telling the court, "I now have all the evidence; that evidence shows that there is no genuine dispute over any relevant fact and the law entitles me to win." A party moving for summary judgment cannot simply throw out unsupported allegations. That party must present *evidence*— "depositions, documents, electronically stores information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A)—to support that party's version of the facts. Summary judgment is, as the Seventh Circuit has colorfully put it, "the

12

'put up or shut up' time in litigation." <u>Brown v. CACH, LLC</u>, 94 F.4th 665, 667 (7th Cir. 2024) (quoting <u>Schacht v. Wis. Dep't of Corr.</u>, 175 F.3d 497, 504 (7th Cir. 1999)).

The plaintiff has not presented any evidence in support of his motion. He has filed six pages of argument with no citations to the record. Because the plaintiff did not follow the rules, has not provided any legal citations and has not provided the court with any evidence, the court has no legal or factual basis for granting his motion.[9]

Because the plaintiff did not timely file his motion, because he did not comply with Federal Rule of Civil Procedure 56 or this court's Civil L.R. 56 and because he has provided no evidence to support his motion or his version of the facts, the court will deny the plaintiff's motion for summary judgment. Dkt. No. 60.

## IV.    Defendants' Motion to Strike (Dkt. No. 67)

As the court stated earlier, on December 11, 2023, the court received from the plaintiff a document titled "Plaintiffs Reply to Defendants ECF 62-65." Dkt. No. 66. The defendants have filed a motion to strike that filing, arguing that it is untimely and improper. Dkt. No. 67. The defendants argue that if the plaintiff intended the filing to be part of the summary judgment briefing—either as a sur-reply to the defendants' summary judgment motion or as a reply in support of the plaintiff's own motion—it is untimely. <u>Id.</u> at 2. The defendants assert that the summary judgment deadline was October 16, 2023, and that based on the briefing schedule mandated by the local rules, all briefing should

---

[9] At the end of the motion, the plaintiff asked for a hearing. Dkt. No. 60 at 5. The only reason he gives for asking for a hearing is that he would "like to hang out in a federal court house." <u>Id.</u> Because the plaintiff has provided no evidence to support his motion, there is nothing for the court to decide at a hearing.

13

have been completed by the end of November 2023; they point out that the court did not receive Dkt. No. 66 until December 11, 2023. Id. The defendants argue that the plaintiff was required either to comply with the briefing schedule in the local rules or seek the court's permission to file the additional brief. Id. at 3. The plaintiff has not responded to the defendants' motion to strike.

The defendants filed their motion for summary judgment on October 16, 2023. Dkt. No. 53. Under Civil L.R. 56(b)(2), the plaintiff's opposition materials were due within thirty (30) days—by November 15, 2023. As the court has explained, the court received the plaintiff's own motion for summary judgment on October 27, 2023, dkt. no. 60; to the extent that he meant it as an opposition brief to the defendants' motion for summary judgment (as he says he did), the plaintiff timely filed his opposition brief.

But that was the plaintiff's one and only opportunity to respond to the defendants' motion for summary judgment. This court's procedural rules for summary judgment briefing provide a three-step process: the moving party files an opening brief, the non-moving (opposing) party files a response brief and, if the moving party chooses to do so, the moving party may file a reply brief. Civil L.R. 7(a)–(c), 56(b). Neither the federal rules nor the local rules allow the non-moving party to file what commonly is called a "sur-reply brief." Under this court's Civil L.R. 7(i), "[a]ny paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to the motion requesting leave to file it." So—if the plaintiff intended the document the court received from him on December 11, 2023 to be a sur-reply to the defendants' motion for summary judgment, he was required to ask the court's permission to file it. He did not.

Even if the plaintiff had asked the court's permission to file the document at Dkt. No. 66, the court would not have granted it. The court has the discretion to allow a sur-reply "'only for valid reasons, such as when the movant raises new arguments in a reply brief.'" Watt v. Brown County, 210 F. Supp. 3d 1078, 1082 (E.D. Wis. 2016) (quoting Meraz-Camacho v. United States, 417 F. App'x 558, 559 (7th Cir. 2011)). The defendants' reply brief is at Dkt. No. 61. The court cannot find any new arguments raised in that brief, and the plaintiff has not identified any. The document the court received from the plaintiff on December 11, 2023 responds to arguments that the defendants made in their *opening* summary judgment brief. The plaintiff had the opportunity to make those responses in an opposition brief (the opposition brief he says he incorporated into his own summary judgment brief). So—to the extent that the plaintiff meant for Dkt. No. 66 to be a sur-reply brief opposing the defendants' summary judgment motion, it is unauthorized.

Nor does the document qualify as part of the briefing on the plaintiff's summary judgment motion. The court received the plaintiff's motion for summary judgment on October 27, 2023. Dkt. No. 60. Under Civil L.R. 56(b)(2), the defendants' opposition materials were due within thirty (30) days—by November 27, 2023. In their November 22, 2023 reply brief, the defendants asked the court to strike the plaintiff's summary judgment motion as untimely. Dkt. No. 61 at 5. If the plaintiff wished to reply to that request, Civil L.R. 56(b)(3) required him to do so within fourteen days—that is, by November 6, 2023. The court did not receive the filing at Dkt. No. 66 until December 11, 2023—over a month later. And Dkt. No. 66 does not acknowledge the defendants' motion to strike the plaintiff's motion for summary judgment or respond to that request.

15

The filing at Dkt. No. 66 was not timely filed and does not comply with the rules. The court will grant the defendants' motion to strike the plaintiff's brief at Dkt. No. 66.

## V. Defendants' Motion for Summary Judgment (Dkt. No. 53)

The defendants argue that they are entitled to summary judgment because (1) there is no evidence that the county maintained a policy or practice that caused the deprivation of the plaintiff's constitutional rights, (2) the defendants are entitled to qualified immunity, (3) the defendants did not commit any constitutional violations and (4) the plaintiff failed to comply with pre-suit notice requirements under state law. Dkt. No. 54.

As the court has mentioned several times, the plaintiff filed a combined motion for summary judgment and opposition brief. Dkt. No. 60. The court has explained that that filing does not comply with Civil L.R. 56. Rule 56(b)(2). Specifically as it relates to the defendants' summary judgment motion, the plaintiff's filing did not include a response to the defendants' proposed findings of fact as required by Civil L.R. 56(b)(2)(B) or any opposing affidavits or declarations as described in Rule 56(b)(2)(C).

As the court has explained, the court may require that even *pro se* litigants comply with its local rules. Turner, 569 F. App'x. at 467. A court acts within its discretion when it "concludes that [the *pro se* plaintiff's] filings failed to comply with local rules and as a consequence essentially accept[s] the defendants' proposed facts as true." Id. Because the plaintiff did not file a response to the defendants' proposed findings of fact or any evidence refuting those facts (or supporting his own version of the facts), the court will deem the defendants' facts admitted for purposes of summary judgment. See Civil L.R. 56(b)(4); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to

16

respond by the nonmovant as mandated by the local rules results in an admission.").

A.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting

17

Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

B.    Parties' Arguments

The defendants first argue that the plaintiff's municipal liability claims fail as a matter of law. Dkt. No. 54 at 6. They argue that the plaintiff has not established that the Sheriff's Office's policies and procedures caused the alleged deprivation of his constitutional rights. Id. According to the defendants, the plaintiff "failed to conduct any discovery" to uncover any unconstitutional policy that caused him harm or any widespread custom or practice of unconstitutional activity. Id. at 7. The defendants also argue that the individual defendants had no knowledge of the plaintiff's posts and did not participate in the decision to remove them or block the plaintiff from making further posts, which means they cannot be held individually liable. Id. at 7–8.

In the alternative, the defendants argue that the individual defendants are entitled to qualified immunity because they did not violate any clearly established constitutional right. Id. at 9. The defendants assert that the Sheriff's Office did not violate any policies or procedures by deleting the plaintiff's posts and that it was acting in the interest of preserving the safety and security of the community. Id. at 11. The defendants contend that there is no clearly established right to post harassing and potentially defamatory content on a county-run Facebook page. Id. They assert that to the extent the plaintiff properly pled claims against the individual defendants in their individual (rather than official) capacities, the undisputed facts show that

18

neither defendant was personally involved in the events leading to the alleged constitutional violation. Id. at 12.

The defendants next argue that removing the plaintiff's posts was an appropriate, content-neutral regulation on speech. Id. at 13. They contend that they removed the plaintiff's posts because they contained speech that constituted invasion of privacy under Wis. Stat. §895.50(2)(c) (2021), could have been defamatory and could have affected ongoing law enforcement matters. Id. at 14. According to the defendants, the plaintiff's posts accused law enforcement of committing crimes related to an ongoing investigation and inappropriately publicized his former girlfriend's alleged crimes and private behaviors. Id. at 15. The defendants argue that it is the Sheriff's Office's policy to remove posts that violate state, federal or local laws. Id. at 16. The defendants argue that the plaintiff was not blocked until he publicly posted about his former girlfriend, even though he had been sending private "taunting" messages to the Sheriff's Office. Id. at 17.

The defendants argue that their actions were sufficiently tailored to protect the public interest in the least restrictive manner. Id. They reason that the restriction is narrowly tailored because the plaintiff remains free to post content elsewhere on Facebook and to view the Sheriff's Office's posts. Id. at 18. The defendants say that their restriction was sufficiently related to their interest in protecting the community and the individuals the plaintiff attacked in his post. Id. at 19.

The defendants argue that they did not violate the plaintiff's due process rights by restricting his access to the Facebook page. Id. They assert that there was no procedural due process violation because the plaintiff had no cognizable property interest in his ability to post on the Facebook page and he

19

has not identified any process of which he was deprived. Id. at 20–21. The defendants maintain that there was no substantive due process violation because they did not violate any fundamental right or liberty by blocking the plaintiff. Id. at 22.

The defendants argue that to the extent the plaintiff contends he was discriminated against in violation of the Fourteenth Amendment, that claim also must fail. Id. at 23. They contend that the plaintiff was not singled out or treated differently than others when they blocked him. Id. at 23–24. Rather, the defendants explain that they simply were following their social media policies. Id. at 24.

Turning to the state law claims, the defendants argue that the plaintiff failed to comply with the necessary pre-suit procedure prescribed by Wis. Stat. §893.80(1d). Id. at 25–26. They assert that the plaintiff did not notify Ozaukee County of his claim until more than two years after he was blocked, which is far outside the 120-day limitation period. Id. at 26. The defendants point out that the plaintiff filed his lawsuit sixteen days after submitting his notice of claim and did not allow the county enough time to determine whether to disallow the claim. Id. And the defendants maintain that even if the plaintiff had followed the proper procedure, Wis. Stat. §946.12(2) provides him no private right of action. Id.

The plaintiff responds that the county *does* have a policy that allows its employees to infringe on citizens' constitutional rights. Dkt. No. 60 at 1. He disputes the defendants' reasoning for deleting his posts, arguing that his posts were not defamatory or an invasion of privacy. Id. at 2. He argues that he "only stated facts" in the posts without naming specific private individuals other than officers. Id. He contends that his posts were intended to identify

20

government employees who violated the law and engaged in misconduct, which he says means that the posts should be freely available. Id. at 2–3. The plaintiff asserts that the defendants have "admitted to ignoring [his] pleas to mitigate and offer remedy" and that they never warned him before blocking him. Id. at 3. He opines that this case is "pathetically simple" because citizens should be able to "voice in a public square their grievances against specific government officials." Id. The plaintiff argues that the private messages he sent the defendants are irrelevant and "have absolutely no weight" when it comes to his public speech. Id. at 4. He asserts that a jury would find that he is entitled to make complaints about the government and include relevant context such as officers' names in the speech. Id. at 5.

The defendants reply that the plaintiff filed no evidence supporting his claim that the county had a policy or custom of violating constitutional rights. Dkt. No. 61 at 2-3. They note that the plaintiff's opposition brief cited no caselaw. Id. at 3. They emphasize that even if there had been a violation of an internal policy (or even a state statute), that fact alone would not prove a *constitutional* violation. Id. The defendants emphasize that the plaintiff did not respond to their qualified immunity arguments. Id. They emphasize that the plaintiff did not respond to their First Amendment arguments. Id. at 4. They emphasize that the plaintiff did not respond to their argument that they did not violate his due process rights, id., or their argument that they did not violate his right to "equal access," id. at 5, or their argument that he did not comply with Wisconsin's statutory notice provision, id., or their argument that Wis. Stat. §946.12(2) provides no private right of action, id.

C.    <u>Analysis</u>

    1.    *Section 1983 Claims*

The plaintiff's federal law claims allege that the defendants violated his constitutional rights by deleting his Facebook posts and blocking him from making further posts. Section 1983 of Title 42 is the federal statute through which a plaintiff may bring a claim that a state actor—an employee of a state, county or local government—violated his constitutional rights. To prevail on a §1983 claim, the plaintiff must prove by competent evidence that (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) the person who deprived him of that right was acting under color of state law. <u>Buchanan-Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted). Under §1983, "a public employee's liability is premised on [his] own knowledge and actions, and therefore requires evidence that each defendant, through [his] own actions, violated the Constitution." <u>Aguilar v. Gaston-Camara</u>, 861 F.3d 626, 630 (7th Cir. 2017) (citing <u>Burks v. Raemisch</u>, 555 F.3d 592, 594 (7th Cir. 2009)). "[T]o be liable under §1983, the individual defendant must have caused or participated in a constitutional deprivation." <u>Pepper v. Village of Oak Park</u>, 430 F.3d 805, 810 (7th Cir. 2005) (quotation omitted). Without evidence of personal involvement, a defendant cannot be liable under §1983. <u>Walker v. Wexford Health Sources, Inc.</u>, 940 F.3d 954, 966 (7th Cir. 2019).

The undisputed facts establish that defendants Johnson and Nelson—the only individual defendants named in the first amended complaint—were not personally involved in the alleged constitutional deprivation. The defendants' proposed findings of fact state that "[n]either Sheriff Johnson or Mr. Nelson had any personal involvement in reviewing the Facebook posts or

messages at issue or decision making in removing them or blocking [the plaintiff's] access." Dkt. No. 55 at ¶17. Because the plaintiff did not dispute this fact and the court has deemed it admitted for the purposes of summary judgment, the plaintiff cannot proceed with a §1983 claim against Johnson or Nelson as a matter of law. Accordingly, the court need not address the defendants' other arguments related to the individual defendants' §1983 liability. The court will grant summary judgment for Johnson and Nelson on the plaintiff's §1983 claims.

Turning to the claims against the county, the Supreme Court has held that a municipality such as a county is a "person" under §1983 and may be held liable for its own violations of the federal Constitution and laws. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690–91 (1978). To prevail on a Monell claim for municipal liability, the plaintiff must show that the alleged constitutional violations were the result of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. The Seventh Circuit has recognized three types of municipal action that can support municipal liability under §1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Spiegel v. McClintic, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted).

A plaintiff bringing a Monell claim "must show that the policy or custom demonstrates municipal fault." Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 235 (7th Cir. 2021) (quotation marks omitted). A plaintiff establishes

23

municipal fault when he proves that the municipality acted, or directed an employee to act, in a way that violates a federal right. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404-05 (1997). On the other hand, where the plaintiff does not allege that the municipality's action was facially unconstitutional and alleges only that the municipality caused an employee to violate a federal right, a "rigorous standard[ ] of culpability . . . applie[s] to ensure that the municipality is not held liable solely for the actions of its employee." Id. at 405. The plaintiff must demonstrate that the municipality itself acted with "deliberate indifference" to his constitutional rights. Id. at 407. This showing requires the plaintiff to "prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." First Midwest Bank ex rel. Est. of LaPorta v. City of Chicago, 988 F.3d 978, 987 (7th Cir. 2021).

Finally, a plaintiff bringing a Monell claim must prove that the municipality's action was the "moving force" behind the violation of his constitutional rights. Brown, 520 U.S. at 404. This is a "rigorous causation standard" that requires the plaintiff to "show a 'direct causal link' between the challenged municipal action and the violation of his constitutional rights." LaPorta, 988 F.3d at 987 (quoting Brown, 520 U.S. at 404).

The plaintiff asserts that the county has a "policy and procedure that, as explained before in previous filings, attempts to both demand employees abide by the Constitutional Rights of citizens but also allows for conduct of employees that infringes upon those rights." Dkt. No. 60 at 1. As an initial matter, this statement does not make clear what constitutional rights the plaintiff believes the county's alleged "policy or procedure" violates. More important, the plaintiff has presented no evidence of an expressly

24

unconstitutional policy or custom, nor has he identified any widespread practice that is permanent and well-settled, nor has he presented evidence that his injury was caused by a person with final policymaking authority. Spiegel, 916 F.3d at 617. The court does not know what the plaintiff means when he refers to his "previous filings," and the court will not comb through all his previous filings to find out. The court will not consider evidence or argument that was not properly presented to it in the plaintiff's opposition to the defendants' motion for summary judgment.

The only express policy before the court is the county's social media policy, and the plaintiff has not established that that policy is facially unconstitutional. The plaintiff has presented no evidence that the county has a pattern or practice of blocking other individuals from posting on the Facebook page. The evidence before the court (presented by the defendants—the only party to have presented evidence) shows that the county rarely blocks users from posting on the page. And as stated above, it is undisputed that the individual defendants had no personal involvement in the decision to block the plaintiff, so even assuming the individual defendants had final policymaking authority, the plaintiff cannot establish that his injury was caused by them. The plaintiff has not established a Monell claim. The court will grant summary judgment for the county on the plaintiff's Section 1983 claims.[10]

   2. *State Law Claims*

The defendants assert that the court must dismiss the plaintiff's state law claims because he did not follow the procedures prescribed by Wis. Stat. §893.80(1d). "In order to commence a lawsuit against a governmental entity in

---

[10] Because the court has found that the defendants are entitled to summary judgment on the merits of the plaintiff's constitutional claims, it need not address whether the defendants are entitled to qualified immunity.

Wisconsin, a claimant 'must, as a precursor to actually filing suit, serve written notice of the circumstances of the claim within 120 days after the happening of the event.'" Gilbertson v. City of Sheboygan, 165 F. Supp. 3d 742, 746 (E.D. Wis. 2016) (quoting E–Z Roll Off, LLC v. County of Oneida, 335 Wis. 2d 720, 733 (Wis. 2011)). "Section 893.80[(1d)] prohibits an individual from bringing an action against a municipality . . . unless a notice of claim is first presented and the claim is disallowed. The municipality has 120 days to disallow any claim presented." State *ex rel.* Auchinleck v. Town of LaGrange, 200 Wis. 2d 585, 593 (Wis. 1996). The statute requires that the written notice contain "the circumstances of the claim," "the address of the claimant and an itemized statement of the relief sought." Wis. Stat. §893.80(1d)(a)–(b). The claim must be "disallowed" by the municipality before the plaintiff can proceed with a case. Id. "Compliance with subsections (a) and (b) of §893.80(1d) is mandatory to avoid dismissal of a lawsuit." McGee v. Oshkosh Def., LLC, Case No. 18-CV-705, 2019 WL 4758216, at *8 (W.D. Wis. Sept. 30, 2019) (quoting Vanstone v. Town of Delafield, 191 Wis. 2d 586 (Wis. Ct. App. 1995)).

The county blocked the plaintiff from posting on the Facebook page on February 16, 2018. Dkt. No. 55 at ¶6. But the plaintiff did not notify the county of his claim until August 24, 2020—over two years, and certainly more than 120 days, after the injury he complained of. Id. at ¶13. The plaintiff filed this case on September 9, 2020—sixteen days after he notified the county of his claim and long before the county's 120-day period for disallowance had expired. The plaintiff has provided no evidence that the county disallowed his claim before he filed the federal lawsuit. Because he did not timely notify the county of his claims against it, and because he did not wait until the county had disallowed his claim before filing this lawsuit, the court must dismiss the

plaintiff's state law claims. The court will grant summary judgment for the defendants on the plaintiff's state law claims and will dismiss the case.

**VI. Conclusion**

The court **DIRECTS** the clerk's office to update the docket to add defendants Sheriff James Johnson and Timothy Nelson.

The court **DENIES** the plaintiff's motion for leave to file a second amended complaint. Dkt. No. 50.

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 60.

The court **GRANTS** the defendants' motion to strike. Dkt. No. 67.

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 53.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 27th day of March, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27